UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**STUART FRITZ DOMINQUE**, an individual, and on behalf of himself and all other similarly situated individuals,

          Plaintiff,

v.

**CAPREIT, INC.**, a Maryland corporation,

          Defendant.

Case No. 2:18-cv-00231-NPM

**PLAINTIFF'S UNOPPOSED MOTION
FOR ENTRY OF PRELIMINARY APPROVAL ORDER
AND INCORPORATED MEMORANDUM OF LAW**

This wage and hour lawsuit against Defendant CAPREIT, Inc. ("CAPREIT" or "Defendant") has been settled, and Plaintiff Stuart Fritz Dominique ("Plaintiff") respectfully files this Motion requesting the preliminary approval of the parties' amended settlement agreement.[1] Preliminary approval of this settlement is appropriate for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.  The Litigation Background and Procedure**

Plaintiff brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of individuals who, at any time during the period between April 9, 2015 and

---

[1] A copy of the Amended Settlement Agreement is attached to Plaintiff's Unopposed Motion for Entry of Preliminary Approval Order as **Exhibit A.** A copy of a "track changes" version of the agreement (showing the changes made to the original Settlement Agreement) is attached as **Exhibit B**.

December 31, 2017,[2] were employed by Defendant as non-exempt, hourly employees and who worked overtime and received regular commissions as part of their compensation.[3] Plaintiff asserted that he and other similarly situated, non-exempt, hourly employees, who received regular commissions as part of their compensation, were not properly compensated for all hours worked. Plaintiff sought compensation for unpaid wages (including overtime and non-overtime wages), as well as other relief under the FLSA, including liquidated damages, costs, and attorneys' fees.

Defendant denied, and continues to deny, that it violated any applicable law and contends that it properly paid its employees for all hours worked.[4] Defendant argued that Plaintiff and other employees who received commissions as part of their compensation during the statutory period were properly compensated for all hours worked, including for weeks during which they worked overtime and earned commissions. Defendant also argued that Plaintiff's claims could not be adjudicated on a class or collective basis. Nonetheless, Defendant agreed to settle this matter to avoid the disruption of its business due to the pendency and expense of litigation and to resolve all claims asserted.

This Settlement was reached only after a year of hard-fought litigation and Plaintiff: (a) conducted extensive research of the facts and law prior to the filing of the action; (b) prepared a detailed analysis of Plaintiff's time and pay records; (c) prepared Plaintiff's answers to the Court's Interrogatories,[5] (d) propounded written discovery requests and analyzed Defendant's answers to those requests, (e) participated in a settlement conference with counsel for Defendant;[6] (f) reviewed and analyzed several detailed damage models for all putative class members, which counsel for

---

[2] Commissions were included in the overtime calculation as of January 2018.

[3] *See* D.E. 18, Amended Complaint.

[4] *See* D.E. 23, Defendant's Answer and Statement of Defenses to Amended Complaint.

[5] *See* D.E. 25, Plaintiff's Answers to the Court's Interrogatories.

[6] *See* D.E. 26, Joint Report Regarding Settlement.

Defendant prepared and shared with Plaintiff's counsel for purposes of furthering the parties' good faith negotiations, and (g) engaged in extensive arm's-length negotiations between counsel before a settlement could be reached.

On June 26, 2019, Plaintiff filed his Unopposed Motion for Entry of Approval Order and Incorporated Memorandum of Law ("Motion"). *See* D.E. 42. On June 17, 2020, the Court held a telephonic hearing to address and review Plaintiff's Motion and Settlement Agreement with the parties. *See* D.E. 49. During the telephonic hearing, the Court outlined four concerns related to the Motion and Settlement Agreement, which underlined its decision to deny Plaintiff's Motion, and ordered the parties to file a renewed motion by July 17, 2020, to address its concerns. *See generally* D.E. 51. First, the Court expressed concerns that the parties failed to adequately demonstrate how Plaintiff and the putative class members are similarly situated. Second, the Court expressed concerns related to the parties' proposed one-step approval process. *See* D.E. 42, Ex. A at ¶ 3. Third, the Court expressed concerns related to the parties' inclusion of a no publicity provision in the Settlement Agreement. *See* D.E. 42, Ex. A at ¶ 7.2. Fourth, the Court expressed concerns about the parties' proposal to permit all unclaimed funds to revert back to the Defendant. *See* D.E. 42, Ex. A at ¶ 4.6. For the reasons outlined herein and the Amended Settlement Agreement, the Court should grant Plaintiff's Unopposed Motion for Entry of Preliminary Approval Order and Incorporated Memorandum of Law.

    **1.**    **<u>Similarly Situated Concern.</u>**

Citing *White v. SLM Staffing LLC*, No. 8:16-cv-2057-T-30TBM, 2016 U.S. Dist. LEXIS 109089 (M.D. Fla. Aug. 8, 2016), the Court found Plaintiff's explanation as to how the putative class members and Plaintiff are similarly situated deficient. *See generally* D.E. 51. *See also* 29 U.S.C. § 216(b). In denying plaintiff's opposed motion for conditional certification in *White*, the

court held that plaintiff's mere recitation that he and the putative class were similarly situated because they were non-exempt employees that performed "labor related duties" fell far short of even the lenient conditional certification standard. *Id*. at *5-6 (holding that "such a broad and inexact class of employees" would effectively eviscerate even a lenient conditional certification standard).

Distinguishable here, Defendant has not opposed Plaintiff's putative class definition. Moreover, the putative class is neither broad nor inexact. Plaintiff contends that he and putative class members are similarly situated as a result of being non-exempt, hourly employees who received regular commissions as part of their compensation that was not included in the regular rate for purposes of calculating overtime. Specifically, Plaintiff and the putative class members received regular commission payments as a result of their roles in contributing to the engagement of new or renewed residential leases. While the Plaintiff and the putative class members had different job titles and roles in engaging in new or renewing residential leases, ***they were all subject to the same alleged unlawful policy*** – as their commissions were not included in the calculations of their regular rates for purposes of calculating overtime – which Plaintiff contends violated the FLSA. *Dawkins v. GMAC Ins. Holdings*, No. 3:03-cv-322-J-99HTS, 2005 U.S. Dist. LEXIS 61892, at *25-26 (M.D. Fla. Aug. 31, 2005) (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 411 (W.D. Pa. 2000) (opt-in plaintiffs who functioned in different [roles] were similarly situated despite some differences in job duties, geographic assignments and hourly billing rates **because they asserted a common claim**) (emphasis added)). Defendant concedes that all members of the putative collective were eligible to receive commissions and subjected to the same policy with respect to the inclusion of such commissions in the overtime calculation. Thus, Defendant's compensation policy related to commission payments – which underlies Plaintiff's claim –

4

extended to Plaintiff and each member of the putative class. *Dawkins*, 2005 U.S. Dist. LEXIS 61892, at *19 (finding the similarly situated threshold satisfied where there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case) (citations omitted).

### 2. **One-Step v. Two-Step Approval Process Concern.**

During the course of the telephonic conference with the parties on June 17, 2020, the Court expressed its concern over the parties' proposal of a one-step approval process, rather than a two-step process. The two-step approval process would allow the parties to send out notice of settlement to the putative class and permit the putative class members time to join before the Court issues final approval of the settlement. The two-step approval process would also provide putative class members the ability to present objections to the settlement. Since the June 17, 2020 call, the parties have met and conferred related to this concern. Although the parties contend that a one-step approval process is consistent with the FLSA and appropriate, they have agreed to adopt a two-step approval process and have revised the Amended Settlement Agreement to reflect this change. *See* Ex. B at pgs. 7-10.

### 3. **No Publicity Provision Concern.**

During the course of the telephonic conference with the parties on June 17, 2020, the Court also expressed its concern over the parties' inclusion of a non-publicity provision in the Settlement Agreement in light of the FLSA's prohibition of confidentiality provisions. Since the June 17, 2020 call, the parties have met and conferred related to this concern. Although the parties contend that a no publicity provision is consistent with the FLSA and appropriate, they have agreed to remove the no publicity provision from their Amended Settlement Agreement and have revised the Amended Settlement Agreement to reflect this change. *See* Ex. B at pgs. 15-16.

    **4.** **<u>Reversion Provision Concern.</u>**

During the course of the telephonic conference with the parties on June 17, 2020, the Court also expressed its concern over the parties' proposal to permit any portion of the Maximum Gross Settlement Amount, as defined below, not distributed to Plaintiff, the Participating Class Members, Class Counsel, and/or the Settlement Administrator to revert to the Defendant. Since the June 17, 2020 call, the parties have met and conferred related to this concern. Although the parties contend that reversion of the undistributed Maximum Gross Settlement Amount is consistent with the FLSA and appropriate, they have agreed that Defendant shall donate these remaining funds to Give Kids The World, Inc., one of its nonprofit charitable organization partners. *See* Ex. B at pg. 12.

## II. The Settlement Agreement Background and Procedure

The Settlement includes a gross cash payment of Sixty Five Thousand Dollars ($65,000.00) (the "Maximum Gross Settlement Amount"). The parties have agreed that the Maximum Gross Settlement Amount shall be allocated to the Plaintiff's settlement amount, the settlement amounts of the Participating Class Members (as defined in ¶3.4 of the Amended Settlement Agreement), and attorneys' fees and expenses, including administrative costs associated with services to be provided by a designated settlement administrator.[7] (Amended Settlement Agreement, ¶1.15(a)(b)). The parties believe this Gross Settlement Amount is fair, reasonable, and beneficial to the Plaintiff and the Individual Class Members. Indeed, Plaintiff's and the Individual Class Members'[8] settlement allocation reflects the approximate value of their claims, as determined by

---

[7] The Settlement Administrator will be AB Data, Inc. *See* Amended Settlement Agreement at ¶1.10.

[8] The putative Class Members are 443 current and former employees of CAPREIT who were employed as non-exempt, hourly employees, who worked overtime and received regular commissions as part of their compensation from June 1, 2015 through December 31, 2017. (Amended Settlement Agreement ¶1.5).

a careful review of the evidence obtained in discovery, including time and pay data for the relevant time period. In fact, most of the Individual Class Members' claims were less than $10 but through the efforts of Plaintiff's counsel, all Participating Class Members under the Settlement will receive a minimum payout of at least $10.

In exchange, Plaintiff will release all FLSA and state law wage and hour claims that were or could have been asserted in the Complaint based on the facts alleged for unpaid wages, overtime compensation, liquidated or other damages (Amended Settlement Agreement ¶5.1). The Participating Class Members will release all FLSA and state law wage and hour claims that were or could have been asserted in the Amended Complaint based on the facts alleged for unpaid wages, overtime compensation, liquidated or other damages from June 26, 2015 through December 31, 2017 (Amended Settlement Agreement at Exhibits B & C).

Pursuant to the Amended Settlement Agreement *(id.* ¶3), the Settlement Administrator will mail, via U.S. First Class Mail, to each Class Member's last known address, a Notice of Settlement (Amended Settlement Agreement, Ex. B), along with a Claim Form (Amended Settlement Agreement, Ex. C). The Notice of Settlement and/or the Claim Form will specify the recipient's specific Class Member Allocation. Class Members who wish to become Participating Class Members shall sign and return their Claim Form (via U.S. First Class Mail, facsimile, and/or to the case-specific e-mail address provided by the Settlement Administrator) to the Settlement Administrator during the Notice Period. *Id.* ¶3.4. Only those Class Members who sign and return their Claim Form will become Participating Class Members and will be bound by the terms of the Amended Settlement Agreement. *Id.*

Within 7 days following the expiration of the Notice Period, the Settlement Administrator will provide Class Counsel and Defense Counsel with a comprehensive report identifying the

Participating Class Members and their corresponding Individual Class Member Allocations. Class Counsel will file with the Court a listing of all Participating Class Members and their respective Individual Class Member Allocations no later than 7 days after receipt of the report from the Settlement Administrator. The filing of that list shall be deemed to constitute a written consent of the Participating Settlement Class Members to have their FLSA claims approved by this Court pursuant to 29 U.S.C. § 201 *et seq*. The Settlement Administrator will provide the original executed Claim Forms to Defense Counsel with a copy to Plaintiff's Counsel. *Id.* ¶3.6.

Any Class Member who wishes to present objections to the proposed settlement at the Fairness Hearing must do so first in writing. To be considered, such objections must be sent to the Settlement Administrator via U.S. First Class Mail and be received by the Settlement Administrator by a date certain, to be specified on the Notice of Settlement, which shall be forty-five (45) days after the initial mailing of the Notice of Settlement. The Settlement Administrator shall stamp the date received on the original and send copies of each objection to Defense Counsel and Class Counsel not later than three (3) business days after receipt thereof. Class Counsel shall file the date-stamped originals of any and all objections with the Court within three (3) business days after receipt from the Settlement Administrator. An objector who timely submits a written objection may appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he or she submits his or her written objections. An objector may withdraw his or her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided herein. The Parties may file with the Court written responses to any filed objections no later than fourteen (14) calendar days before the Fairness Hearing. *Id.* ¶ 3.7.

Plaintiff will file with the Court, in accordance with the schedule to be established in the Preliminary Approval Order, and not later than fourteen (14) calendar days before the Fairness Hearing, an unopposed motion for entry of the Final Approval Order as an Order of Court. The motion shall be prepared by Class Counsel and subject to the prior review and approval of Defense Counsel. The date of the Fairness Hearing will be set by the Court. *Id.* ¶ 3.8. At the Fairness Hearing, the parties will request that the Court issue a Final Approval Order. *Id.* ¶ 3.9. Payment Obligations shall be met consistent with the Amended Settlement Agreement. *Id.* ¶ 4.1-4.7.

The Amended Settlement Agreement satisfies all of the criteria for approval under federal law and is fair, reasonable, and adequate. Accordingly, Plaintiff requests that the Court issue an order:

1) Granting preliminary approval of the Amended Settlement Agreement in accordance with the FLSA and administration according to its terms;

2) Authorizing the Settlement Administrator to distribute the Notice of Settlement and Claim Form to Class Members pursuant to the Amended Settlement Agreement;

3) Scheduling a final Fairness Hearing at a date determined by the Court; and,

4) Staying and suspending all proceedings in this Civil Action, other than such proceedings as may be necessary to carry out the terms and conditions of the Amended Settlement Agreement and Preliminary Approval Order, until further order of the Court.

### ARGUMENT

#### I. Legal Framework

There are two ways in which claims under the FLSA can be settled and released by employees. *First*, §216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. §216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). *Second*, in the context of a private lawsuit brought by an employee

against an employer under section §216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the court with a proposed settlement and the court enters a stipulated judgment approving the fairness of the settlement. *Id.*; *see also Sculte, Inc. v. Gandi,* 328 U.S. 108, 66 S. Ct. 925, 928 n. 8, 90 L. Ed. 1114 (1946); *Jarrad v. Southeastern Shipbuilding Corp.,* 163 F.2d 960, 961 (5th Cir. 1947).

The Eleventh Circuit has stated that the circumstances justifying court approval of an FLSA settlement in a litigation context are as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

The Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354. In determining whether the settlement is fair and reasonable, the Court may consider the following factors:

1. the existence of fraud or collusion behind the settlement;
2. the complexity, expense, and likely duration of the litigation;
3. the stage of the proceeding and the amount of discovery completed;
4. the probability of plaintiffs' success on the merits;
5. the range of possible recovery; and
6. the opinions of the counsel.

*Leverso v. South Trust Bank of Ala. Nat. Assoc.,* 18 F.3d 1527 n.6 (11th Cir. 1994). The Court

should be mindful of the "strong presumption in favor of finding a settlement fair." *Hamilton v. Frito-Lay, Inc.*, No. 605-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007).

## II. This Settlement Represents a Fair and Reasonable Resolution of a *Bona Fide* Dispute And All Of The Factors Weigh In Favor Of Approval

The Amended Settlement Agreement represents a fair and reasonable resolution of a *bona fide* dispute regarding Plaintiff and Participating Class Members' unpaid wages, reached via arms' length negotiation between adversarial parties and counsel. As discussed, Defendant disputes liability in the instant action. Nonetheless, however, through extensive negotiations based on a review of the discovery, the parties have agreed to settle all of the claims in this dispute. The parties agree that the settlement terms they reached represent a fair and equitable resolution of their dispute as the amount negotiated represents 100% of an estimate of Plaintiff's and the Participating Class Members' alleged losses. Furthermore, approximately 44% of the Individual Class Members' claims were estimated to be less than $10.00 – with many below $5.00. Through the efforts of Plaintiff's counsel, these Participating Class Members are guaranteed a minimum payment of at least $10.00, even though their estimated claims were for less. Thus, a large number of Participating Class Members will receive in excess of 100% of the estimated value of their claim.

Further, the Amended Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the settlement furthers the purposes of the FLSA by providing Plaintiff and the Participating Class Members with a meaningful recovery for their unpaid overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to

the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as all of the factors weigh in favor of approval.

### 1. The Settlement Is Free From Fraud And Collusion.

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Braynen v. Nationstar Mortgage*, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) (internal quotation omitted). Here, there is no evidence of any fraud or collusion. Rather, this settlement was the result of intense months long arms-length negotiation between the parties' counsel after a year of hard-fought litigation. Discovery in this case was extensive and involved the production of Plaintiff's and the Individual Class' Members' payroll records and Defendant's responses to interrogatory answers and document requests. Only after analyzing these documents was Plaintiff able to negotiate a resolution of the claims at issue in this lawsuit that represent an estimate of 100% of Plaintiff's and the Individual Class Members' alleged losses.

### 2. The Complexity, Expense, And Likely Duration Of The Litigation.

Courts have found this factor weighs in favor of settlement approval where the litigation, including appellate process, involves numerous class members and significant time and expense. *See e.g., Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014) (holding this factor favored settlement approval where "[c]ontinuing to litigate the[] claims would have been time-consuming and expensive" and "even in plaintiffs were to prevail, class certification proceeding, a class trial and the appellate process could go on for years."); *see also In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1345 (S.D. Fla. 2011) ("The claims and defenses

are complex; litigating them has been difficult and time consuming. Although this litigation has been pending for more than two years, recovery by any means other than settlement would require additional years of litigation in this Court and the appellate courts.").

The Settlement here – which will provide relief for the Participating Class Members without the need for further litigation – is preferable to the expense and time that a trial and appeal would require. While Plaintiff is confident in the strength of its case, it is also pragmatic in its awareness of the various defenses available to Defendant, and the risks inherent in trying this lawsuit. The Defendant had numerous affirmative defenses, including a statute of limitations defense, that could have substantially reduced the recovery negotiated here. Furthermore, even if the Class did prevail at trial, any recovery would be delayed for years by an appeal. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). The Settlement provides relief to Plaintiff and the Participating Class Members without further delay. Accordingly, this factor weighs in favor of approval.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed Weigh In Favor Of Approval Of The Settlement.

This factor turns on "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1348 (internal quotations omitted). "[S]ignificant discovery, merits briefing, and class certification motion practice" indicate that class counsel are well-informed of the strengths and weaknesses of the litigation. *Hall,* 2014 WL 7184039, at *4; *Lipuma*, 406 F. Supp. 2d at 1324 (stating that courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits

13

of settlement against further litigation.").

The Settlement was reached after a year of hard-fought litigation and after substantial discovery was completed. Specifically, Plaintiff alleged that the overtime violation occurred on the face of Defendant's payroll records. Defendant produced the payroll records for Plaintiff and the Individual Class Members, along with answers to certain written discovery, that allowed Plaintiff's counsel to be well informed in the settlement negotiations. As a result of that extensive discovery, Plaintiff's counsel was extremely well positioned to evaluate the strengths and weaknesses of the Plaintiff's and the Participating Class Members' claims and the prospects for success at trial and on appeal. Accordingly, this factor strongly favors approval of the Settlement.

### 4. The Probability Of Success On The Merits Weighs In Favor Of Approval Of The Settlement.

Under this factor, the Court considers "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1349 (internal quotation omitted). "[T]he Plaintiff's likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 692 (S.D. Fla. 2014) (internal quotation omitted).

Although Plaintiff's counsel is confident about the merits of the case, there were substantial hurdles in prosecuting this case through trial and appeal. The Plaintiff's chances for success at trial turned on many factors, including the Court finding, that certain of Defendant's affirmative defenses did not apply. And, even if Plaintiff prevailed at trial, moreover, the prospect of an appeal posed an additional risk to the Plaintiff's ultimate success on the merits. On the other hand, this Settlement guarantees relief for the Plaintiff and the Participating Class Members without any further delay. *See, e.g., In re Soderstrom*, 477 B.R. 249, 256 (Bankr. M.D. Fla. 2012) ("In this

case, under these circumstances, a bird in the hand is worth two in the bush.") Accordingly, this factor weighs in favor of approval.

### 5. The Range Of Possible Recovery Weighs In Favor Of Approval Of The Settlement.

"In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *In re Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1350 (internal quotations omitted) (approving settlement that provided recovery of 9% to 45% of potential recovery that could have been obtained through trial). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542; *see also Perez v. Asurion Corp.,* 501 F.Supp.2d 1360, 1380-81 (S.D. Fla. 2007) ("The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable.").

It is important to weigh the benefits Plaintiff and the Participating Class Members will receive from the settlement against the risks of moving forward and recovering nothing. *Perez,* 501 F.Supp.2d at 1381 ("These benefits to Defendants approximately 40 million customers – when viewed against the backdrop of all of the uncertainties, risks, and problems that have surfaced in this litigation . . . and the reasonable possibility that Plaintiffs would not have recovered anything if they had proceeded to trial – weigh heavily in favor of approving this Settlement."). Here, Plaintiff's counsel negotiated 100% of an estimate of Plaintiff's and the Individual Class Members' alleged losses. Furthermore, 44% of the Individual Class Members had claims with an estimated value of less than $10.00. Notwithstanding, Plaintiff's counsel was able to secure those Class Members a minimum allocation of at least $10.00, resulting in 44% of Participating Class

Members receiving more than 100% of the estimated value of their claims. Thus, Plaintiff and the Participating Class Members will receive a minimum of 100% of the estimated value of their claims, without the attendant risk of trial and appeals and the associated delay of both represents an outstanding result and weighs heavily in favor of approval of the settlement.

### 6. Plaintiff's Counsel Has Evaluated The Strengths And Weaknesses Of Its Claims And Support Approval Of This Settlement.

The endorsement of well informed, experienced class action attorneys is strong support for the approval of a settlement. *Warrant v. City of Tampa,* 693 F.Supp. 1051, 1060 (M.D. Fla. 1988). A court should give great weight to the recommendations of counsel for the parties, given their considerable experience in the litigation. *Id.*; *see also In re Domestic Air Trasp.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (internal quotations omitted); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F.Supp. 660, 672 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement"). Plaintiff's counsel is well apprised of the strengths and weaknesses of the claims at issue here after a year of hard-fought litigation and the extensive discovery that was reviewed. Plaintiff's counsel collectively and unequivocally believes that this Settlement is in the best interests of the Plaintiff and the Participating Class Members.

### III. The Request for Attorneys' Fees and Expenses Should be Approved

As part of the parties' settlement, Plaintiff's attorneys' fees and costs were at all times negotiated separately from the amounts claimed by Plaintiff and are not a function of any percentage of recovery. As the Court explained in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d

1222 (M.D. Fla. 2009), where a "plaintiffs' attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiffs, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiffs' recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiffs' counsel." *Id.* at 1228.

In the instant action, the parties have agreed to payment of Plaintiffs' attorneys' fees and expenses in the amount of $52,861.07, to be paid out of the Maximum Gross Settlement Amount. *See* Amended Settlement Agreement ¶1.15(a). This is the same amount stated in the Amended Settlement Agreement signed by the Plaintiff. Plaintiff believes the requested fees and expenses are reasonable and represent a fair payment to Plaintiff's attorneys for the time and expense devoted to this matter. The parties agreed on the additional amount of fees and costs to be paid to Plaintiff's counsel after agreeing on the amounts to be paid to Plaintiff and the Participating Class Members. Based upon the foregoing, the payment to Plaintiff's counsel for attorneys' fees and costs constitutes a fair and reasonable compromise of the same.

Furthermore, Plaintiff's counsel attached its declaration and attorney time records to Plaintiff's Unopposed Motion for Entry of Approval Order and Incorporated Memorandum of Law filed on June 29, 2019 [D.E. 42-2], which are hereby incorporated by reference. As demonstrated by Plaintiff's counsel's declaration, the payment to Plaintiffs' counsel for attorneys' fees and costs constitutes a fair and reasonable compromise because the amount attributed in the Amended Settlement Agreement to fees is substantially below what Plaintiff's counsel spent to actually prosecute the matter and the lodestar amount. Specifically, as reflected in Plaintiff's counsel's declaration [D.E. 42-2], based upon the nature of this case, the lodestar sum would be higher than the sum actually being recovered for attorneys' fees through the settlement. Moreover, of the total

sum of $52,861.07 being paid by Defendant for attorneys' fees and costs, a total of $8,375.62 is attributable to reimbursable hard costs, including filing fees, process server fees, and administrative costs associated with the services to be provided by the Settlement Administrator.

### IV. Conclusion

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order preliminarily approving this Settlement as fair, reasonable and adequate, and staying and suspending all proceedings in this civil action until further order. A Proposed Order for the Court's consideration is attached as **Exhibit C**.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel certifies, as required by M.D. Fla. Local Rule 3.01(g), that moving counsel conferred with counsel for Defendant on July 15, 2020, and the Defendant does not oppose the relief sought in the motion.

Dated: July 17, 2020

Respectfully Submitted,

/s/*David M. Buckner*
David M. Buckner, Esq., FBN 60550
Seth E. Miles, Esq., FBN 385530
Brett E. von Borke, Esq., FBN 0044802
BUCKNER + MILES
3350 Mary Street
Coconut Grove, Florida 33133
Telephone: 305.964.8003
david@bucknermiles.com
seth@bucknermiles.com
vonborke@bucknermiles.com

Benjamin H. Yormak, Esq., FBN 71272
YORMAK EMPLOYMENT & DISABILITY LAW
99900 Coconut Road
Bonita Springs, Florida 34135
Telephone: 239.985.9691
byormak@yormaklaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system.

s/ *David M. Buckner*
David M. Buckner

## **SERVICE LIST**

Patrick DeBlasio, Esq.
Littler Mendelson, PC
333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Telephone: 305-400-7500
Facsimile: 305-603-2552
Email: pdeblasio@littler.com
*Counsel for Defendant CAPREIT, Inc.*

Benjamin H. Yormak, Esq.
Yormak Employment &
Disability Law
99900 Coconut Road
Bonita Springs, Florida 34135
Telephone: 239.985.9691
E-mail: byormak@yormaklaw.com
*Counsel for Plaintiff*