UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


STUART FRITZ DOMINIQUE,

        Plaintiff,

v.                                                                          Case No. 2:18-cv-231-FtM-NPM

CAPREIT, INC.

        Defendant.

_____

## PRELIMINARY APPROVAL ORDER

Before the Court is Plaintiff's Unopposed Motion for Entry of Preliminary Approval Order (Doc. 54). The parties consented to proceed before the undersigned for all proceedings. (Doc. 53). Plaintiff Stuart Dominique filed this unpaid wage and overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, on behalf of himself and similarly situated individuals. (Doc. 18). Plaintiff seeks: (1) conditional certification of a collective action comprised of similarly situated employees; (2) preliminary approval of the Amended Settlement Agreement; (3) approval of the notice to be sent to putative collective action members; and (4) approval of additional settlement procedures. (Doc. 54). Plaintiff represents Defendant Carpreit, Inc. does not oppose the relief requested. (*Id.*, p. 18). For the reasons discussed below, the motion is granted.

## BACKGROUND

A brief procedural history is instructive. On March 9, 2018, Plaintiff filed this action and on June 29, 2018, Plaintiff filed an Amended Collective Action Complaint. (Doc. 1; Doc. 18). In the Amended Collective Action Complaint, Plaintiff alleges that he and similarly situated individuals worked for Defendant and were not properly paid overtime compensation. (Doc. 18, pp. 3-5). Plaintiff claims that Defendant "miscalculates the overtime wages due by failing to include commission payments in determining the employees' regular rate of pay. Instead, the Defendant intentionally deprives employees of their lawful wages by simply taking their hourly wage and multiplying it by time and one half, thus excluding lucrative commissions earned as part of the employees' regular rate of pay for each pay period." (*Id.*, ¶ 14). Plaintiff also includes collective action allegations in the Amended Complaint. (*Id.*, pp. 6-10). After lengthy negotiations, the parties reached a proposed settlement as to Plaintiff's claims as well as the claims of all putative collective-action members. (Doc. 54, pp. 11-12).

## LEGAL STANDARD

In FLSA cases generally, litigants often seek court approval of the settlement of FLSA claims to avoid the risk that such a settlement without court approval may be unenforceable. And to obtain approval of anything short of a full compensation agreement, courts in this Circuit generally require the filing of the settlement

2

agreement on the public docket for review. Any additional terms, such as non-disparagement or confidentiality provisions, are generally approved when they are for the benefit of the employee or in furtherance of the employee's interests. *See Zdun v. Virtu Cathedral Associates, LLC*, No. 3:17-cv-579-J-39PDB, 2018 WL 3761024, *3-4 (M.D. Fla. May 14, 2018).

"If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Dees v. Hydrady, Inc.*, 706 F. Supp 2d 1227, 1241 (M.D. Fla. 2010). Nevertheless, when scrutinizing FLSA settlements for fairness, courts generally evaluate:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

*Id.*

Under the FLSA, an action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, the FLSA authorizes the use of collective actions against employers accused of violating the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). The purposes of the collective action are twofold: (1) to reduce the burden on plaintiffs by pooling their resources; and (2) to efficiently resolve common issues of fact and law that

arise from the same illegal conduct. *Id.* at 1264. Basically, a collective action allows the efficient resolution of a large number of plaintiffs' claims at one time. *Id.* To maintain a collective action, plaintiffs must demonstrate that they are "similarly situated." *Id.* (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)).

Although not mandated, courts have utilized a two-tiered approach for certifying a section 216(b) opt-in collective action. *Copeland-Stewart v. New York Life Ins. Co.*, No. 8:15-CV-159-T-23AEP, 2016 WL 231237, at *1 (M.D. Fla. Jan. 19, 2016). The Eleventh Circuit found the two-tiered approach a helpful tool for district courts to use to manage these types of cases. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The two-tiered approach consists of the following:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to

4

> proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims. Based on our review of the case law, no representative class has ever survived the second stage of review.

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1211 (5th Cir. 1995)). The party seeking approval of the collective action has the burden of showing a reasonable basis for a claim that other employees are similarly situated to the plaintiff. *Copeland-Stewart*, 2016 WL 231237, at \*2; *see also Cagle's, Inc.*, 488 F.3d at 952 (holding at the conditional certification stage, a plaintiff must demonstrate: (1) there are other employees who desire to opt-in to the action; and (2) the employees who wish to opt-in are similarly situated). This standard is "not particularly stringent," "fairly lenient," and "'flexib[le].'" **CONDITIONAL CERTIFICATION**

In this case, the collective action opt-in members comprise, "all non-exempt employees who worked for Defendant, and earned commissions as part of their compensation in weeks in which they also worked overtime from June 1, 2015 through December 31, 2017." (Doc. 54-1 ¶ 1.5). For conditional certification, Plaintiff must show there are other employees who wish to opt-in to the action and that they are similarly situated. One method to show whether other opt-in plaintiffs wish to opt-in to the action is by showing that "plaintiffs can definitively establish that other people exist who are subject to the same allegedly discriminatory

policies complained of by plaintiffs*." Dawkins v. GMAC Ins. Holdings*, Inc., No.

3:03-CV-322-J-99HTS, 2005 WL 8159667, at *7 (M.D. Fla. Sept. 1, 2005). Here,

Defendant "concedes that all members of the putative collective were eligible to

receive commissions and subjected to the same policy with respect to the inclusion

of such commissions in the overtime calculation." (Doc. 54, p. 4). And there is no

dispute that the putative opt-in plaintiffs are 443 current and former employees of

Defendant. (*Id.*, n.8). Thus, the many former and current employees fit within the

proposed collective action definition and this evidence is neither speculative nor

unsupported. Plaintiff therefore satisfies this requirement.

Next, Plaintiff must provide a reasonable basis to conclude that the

prospective opt-in plaintiffs are similarly situated to him. *White v. SLM Staffing*

*LLC*, No. 8:16-CV-2057-T-30TBM, 2016 WL 4382777, *2 (M.D. Fla. Aug. 17,

2016). Plaintiff represents that even though the putative opt-in plaintiffs may not

have held the same job positions or job titles, they all were non-exempt hourly

employees, who "received regular commissions as part of their compensation that

was not included in the regular rate for purposes of calculating overtime.

Specifically, Plaintiff and the putative collective-action members received regular

commission payments as a result of their roles in contributing to the engagement of

new or renewed residential leases." (Doc. 54, p. 4). And all of the putative opt-in

plaintiffs were subject to the same alleged unlawful policy. (*Id.*). *See Dawkins*,

2005 WL 8159667, at \*8. Keeping the "fairly lenient" standard in mind, the Court

finds Plaintiff has satisfied the similarly situated requirement as well.

### CLAIMS, DEFENSES, AND PROPOSED SETTLEMENT

Plaintiff was employed by Defendant as a marketing associate. (Doc. 18, ¶ 2).

Plaintiff alleges that he and current and former employees are entitled to recover

unpaid overtime compensation owed to him and all current and former employees

who were similarly situated to Plaintiff. (*Id.*, ¶ 11). Defendant disputes liability.

(Doc. 54, p. 11).

Nonetheless, after extensive negotiations, the parties agreed to settle all claims

in this dispute after a year of "hard-fought litigation." (Doc. 54, pp. 2, 11).

Evaluating the proposed settlement for fairness and reasonableness, the Court first

notes both parties agree that the settlement terms represent a fair and equitable

resolution of the dispute, especially in light of the amount negotiated representing

100% of the estimate of Plaintiff's and putative members' alleged losses. (*Id.*). The

parties represent that the settlement is preferable to the expense and time for a trial.

(*Id.*, p. 13). And while Plaintiff is confident in the strength of his case, he is also

aware of the various defenses available to Defendant and the risks associated with

proceeding to trial. (*Id.*). The parties believe approval of the settlement agreement is

in their best interests "given the disputed issues and the risks, time requirements, and

unknown case duration inherent to litigation." *Kleekamp v. Home Performance All.,*

7

*Inc.*, No. 2:17-cv-660, 2018 WL 2986687, *1 (M.D. Fla. June 6, 2018), *report and recommendation adopted*, 2018 WL 2970982 (M.D. Fla. June 13, 2018). There is no indication of any fraud or collusion. (Doc. 54, p. 12). Rather, the settlement agreement results from arms' length negotiations between well informed and experienced counsel. (*Id.*; Doc. 54-1, ¶6.2).

**Monetary Terms**

The maximum gross settlement amount as defined in the Amended Settlement Agreement totals $65,000.00. (Doc. 54-1, ¶ 1.15). During discovery, a list of all putative collective action members was produced and the parties represent that the allocation to each individual reflects a fair and reasonable allocation based on the alleged hours worked by each member, as determined after review and consideration of the discovery. (*Id.*, ¶ 1.15(b). The parties devised a formula if the allocations exceed the maximum settlement amount. (*Id.*). And conversely, the parties agreed if all funds were not distributed, the remaining funds will be donated by Defendant to Give Kids The World, Inc. (*Id.*, ¶ 4.6). On balance, given the allocation formula and identification of collective-action members, it appears highly unlikely that any such cy pres distribution would become necessary. These terms appear fair and reasonable considering the range of possible recovery and the risks of further litigation.

**Settlement Procedures**

Under the terms of the Amended Settlement Agreement, the parties propose a detailed road map of the settlement process. (Doc. 53-1). In sum, upon receipt of a list of putative members, the Settlement Administrator mails to each a notice, and a claim form. (*Id.*, ¶ 3.3). The putative members who wish to participate must sign and return the claim form within a specific time frame. (*Id.*, ¶ 3.4). Following the expiration of the notice period, the Settlement Administrator will provide a comprehensive report identifying the participating members to counsel who will file it with the Court. (*Id.*, ¶ 3.6). The Amended Settlement Agreement also provides a process for objections to the proposed settlement to be heard at a fairness hearing, and a detailed process for payments after final approval of the agreement. (*Id.*, ¶¶ 3.7-4.7). Lastly, the Settlement Agreement contains a limited release that releases Defendant from all claims and causes of action based on applicable federal or state wage and hour laws that arise out of work performed through the date of the final order approving the settlement. (*Id.*, ¶ 5.1). This detailed process appears fair and reasonable.

**Attorney's Fees and Costs**

The proposed settlement includes an agreement that Defendant pays Plaintiff's attorneys' fees and expenses in the amount of $52,861.07. (Doc. 54, p. 17). The parties represent that this amount was negotiated separately from the

amounts claimed by Plaintiff and is not a function of any percentage of recovery. (*Id.*, p. 16-17). This aspect of the settlement also appears fair and reasonable. *See Bonetti v. Embarq Mgmt. Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. Aug. 4, 2009).

### NOTICE

Attached to the motion is the proposed "Notice of Settlement of Lawsuit and Right to Submit Claim" and "Claim Form." (Doc. 54-1, pp. 30-32, 34). The purpose of court-authorized notice is to prevent misleading communications and to ensure that the notice is timely, accurate, and informative. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172, (1989). The Court finds the proposed notice is timely, accurately reflects the claims, and informs the putative members of their rights and obligations. The Court approves both the Notice and the Claim Form.

### FAIRNESS HEARING

The parties request the Court schedule a fairness hearing at least ninety days following the date of the preliminary approval order. (Doc. 54-1, ¶ 1.11). While class actions may only be settled with judicial approval after a fairness hearing (*see* Fed. R. Civ. P. 23(e)(2), such a hearing is not mandated in FLSA settlements. *Mygrant v. Gulf Coast Rest. Grp., Inc.*, No. CV 18-0264-WS-M, 2019 WL 4620367, at *7 (S.D. Ala. Sept. 23, 2019). Although not mandated, courts may schedule a fairness hearing particularly when objections are filed. *Id.* Thus, the Court will set a fairness hearing, but may cancel it if no objections are filed in this case.

Accordingly, it is **ORDERED**:

(1)    The Unopposed Motion for Entry of Preliminary Approval Order (Doc. 54) is **GRANTED** and the Court preliminarily approves the Amended Settlement Agreement (Doc. 54-1).

(2)    The Court authorizes the Settlement Administrator, AB Data, Inc., to distribute the Notice of Settlement and Claim Form to putative collective-action members as set forth in the Amended Settlement Agreement. (*See* Doc. 54-1, ¶ 1.10).

(3)    A Fairness Hearing will be set by separate notice on **Tuesday, February 9, 2021** at **10:00 a.m.**

(4)    This action and all deadlines are stayed to carry out the terms and conditions of the Amended Settlement Agreement and Preliminary Approval Order.

**DONE** and **ORDERED** in Fort Myers, Florida on November 10, 2020.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE